## Case No. 2,280.

### The CADMUS.

[1 Blatchf. & H. 139.] [1]

District Court, S. D. New York. March, 1830. [2]

FORFEITURE OF SEAMEN'S WAGES — DESERTION— ENTRY IN LOG-BOOK — WHEN RIGHT TO WAGES ACCRUES.

1. The 5th section of the act of congress of July 20th, 1790 (1 Stat. 133), designates the only case in which a forfeiture of his wages by a seaman is peremptory, and is the only decree which the court can render.

[Cited in The Elizabeth Frith, Case No. 4,361; The Union, Id. 14,347; The John Martin, Id. 7,357.]

[See note to Case No. 2,282.]

2. What is a sufficient entry in the log-book to prove the desertion which works such forfeiture.

[Cited in The Lillian M. Vigus, Case No. 8,346.]

[See note to Case No. 2,282.]

3. Where the only defence set up to a libel for wages is the desertion of the libellant, the court will not award a sum less than that due, because of misconduct not amounting to desertion.

[Cited in the Elizabeth Frith, Case No. 4,361; Granon v. Hartshorne, Id. 5,689.]

4. Where the defence is to the entirety of wages, because of criminal misconduct by the seaman, no ground is thereby afforded for claiming a diminution of wages, or an equitable set-off.

5. Where a seaman ships for a certain time, a discharge by the master, actual or constructive, entitles the seaman to sue for wages at once, though the stipulated time of service has not expired.

[Cited in The David Faust, Case No. 3,595; Bush v. The Alonzo, Id. 2,223.]

[6. Cited in Granon v. Hartshorne, Case No. 5,689, to the point that when a vessel reaches her port of final destination, and is safely moored at her berth, the voyage is terminated, and all sea service on board connected therewith.]

In admiralty. This was a libel in rem [by Charles Matthews and others] for wages. The shipping articles were, "from the port of Boston to a port or ports in the West Indies, and back to a port or ports in the United States, for and during the term of six months from September 25th, 1829." The vessel arrived at New-York on the 25th of December, 1829. The main defences set up on the hearing were, that the action was prematurely brought, the six months stipulated by the articles not having expired; and that the libellants were absent from the vessel, without leave, for more than 48 hours after her arrival at New-York, and had forfeited all wages by such desertion, under the provisions of the 5th section of the act of congress of July 20, 1790 (1 Stat. 133), which provides, that if any seaman who shall have subscribed the articles, shall absent himself from on board the ship without

leave of the master or officer commanding on board, and the mate or other officer having charge of the log-book shall make an entry therein of his name on the day on which he shall so absent himself, if he returns within forty-eight hours he shall forfeit three days' pay for every day's absence, to be deducted out of his wages; if he is absent more than forty-eight hours at one time, he shall forfeit all the wages due him, and all his goods and chattels on board of the ship, or in any store where they may have been lodged at the time of the desertion, to the use of the owners of the ship, and shall, moreover, pay all damages. The following entries in the log-book were relied on to sustain the defence: "Friday, Dec. 25.—Gave the crew liberty to go ashore, with strict orders that they must be on board early in the morning, to attend to their duty. Saturday, Dec. 26.—Employed in getting everything in readiness for discharging cargo. John Smith and Charles Matthews have been absent from the vessel during the day, without permission; employed two men to work in their place two hours and a quarter each. Sunday, Dec. 27.—John Smith and Charles Matthews made their appearance this morning, and said they would not do any more work on board the vessel unless the law obliged them to. Monday, Dec. 28. —John Smith. Charles Matthews and Abraham Estrom were down this morning, and were asked if they would go to their duty; they said no! which I call a plump refusal. Three laborers employed for the day. Thursday, Dec. 31.—Employed lumpers to discharge the cargo. Seen nothing of the three men that left during the day; names mentioned before. 1830. Friday, January 1.—Stevedores at work discharging cargo. John Smith, Charles Matthews and Abranam Estrom still absent from the vessel, and have not shown themselves (alongside) these two days past. Gave John Harrison and David Harrington permission to go ashore, to be on board early in the night. Saturday, January 2.—John Harrison came on board this evening, having been absent during the day, and said 'it was his intention to leave the vessel, that he had found a new ship,' and went ashore again. Sunday, January 3.—Charles Matthews, John Smith, Abraham Estrom and John Harrison still ashore. Monday, January 4.—Employed a carpenter from shore to finish a job of work which John Harrison, the carpenter, had left unfinished; the four men mentioned before are still absent. Wednesday, January 6.—John Harrison came on board and picked up some carpenter's tools which had been in use, and went away with them, against my orders. Thursday, January 7.—Charles Matthews, John Smith, Abraham Estrom and John Harrison are still absent from the vessel without permission." On the 6th of January the libellants were discharged by the master, and on the 9th this action was

[1] [Reported by Samuel Blatchford, Esq., and Francis Howland, Esq.]

[2] [Reversed in Cadmus v. Matthews, Case No. 2,282.]

instituted pursuant to the statute, by summons, &c.

Edwin Burr, for libellants.
Robert Sedgwick, for claimants.

BETTS, District Judge. The whole amount of wages earned not having been paid, the defence to the action is put upon two grounds: (1) An absolute forfeiture of the wages; and (2) that no right of action existed at the time the suit was commenced. Admitting that the penalty of the act may be applied to a case of absence without leave in the port of destination and after the vessel has been moored, (which point is not now considered.) it seems to me that the specific proof required by the act to entitle the claimants to a forfeiture of wages is not supplied. The act provides, that if any seaman who has signed articles shall absent himself, without leave, and a proper entry shall be made thereof in the log-book, on the same day, &c., and the absence continues more than forty-eight hours at one time, he shall forfeit his wages, &c. It seems to me, that the act designates the only case in which a forfeiture of wages, eo nomine, must be inflicted by the court, and thus far qualifies the punishments awarded under the law maritime for various acts of mal-conduct on the part of sailors, that of desertion included. Judge Story, in his note to Abb. Shipp. (Ed. 1829) p. 468, sums up the effect of the decisions upon this provision of the statute. To lay a foundation for the forfeiture of wages, under the statute, the entry must strictly conform to the terms of the act. The absence must be stated to have been without leave, and to have continued more than forty-eight hours, and the entry must be made in the log-book on the day the mariner absents himself. No other proof will supply either of these omissions. The defence on this point accordingly rests on the question, whether, in fact, the libellants were logged, as it is termed, on the same day they left the ship, and charged with absenting themselves without leave; and whether such entry was made forty-eight hours previous to their being dismissed by the master.

Those of the libellants who are charged with having deserted the vessel, and thus forfeited their wages, are Charles Matthews, Abraham Estrom and John Harrison. I thing the evidence produced does not make out the fact of desertion, according to the requirement of the statute. The only explicit entry affecting the libellants, is that of December 26th in relation to Charles Matthews, and that of January 7th in relation to the three above named. The first entry may have been sufficient in form, but the succeeding entries show that Matthews did not continue absent forty-eight hours, and no more could be effected by this entry, if good proof, than a deduction of wages for the time of his absence. The last entry is deficient in one important requisite, as it does not purport to have been made on the same day the seamen absented themselves. It rehearses the fact that they were absent without permission, but would seem to have reference, as to two of them, to the entry of the 31st of December, to denote the time and manner of such absence. That entry is, that nothing had been seen of the three men who left during the day. The reference to the previous mention of their names may be sufficient to indicate, with all necessary certainty, Matthews and Estrom as those intended. The reading of the two entries then would be, that Charles Matthews and Abraham Estrom left the vessel during the 31st of December, and were still absent, without permission, on the 7th of January. This is not that positive and distinct assertion, by an entry made at the time of absence, which is demanded by the act and recognised by the decisions as requisite to fix a forfeiture of wages on the seaman, even if the terms "without permission" may avail the claimants the same as the statutory phrase "without leave." The entry was not made on the day the act was done, and does not assert that the libellants absented themselves without leave, but equally admits the construction that it was the continuation of the absence, and not its inception, that was without permission. The entry of the 6th of January, in respect to Harrison, is equivocal and insufficient in two respects: first, it is uncertain whether his simply going away, or his going away with the carpenter's tools, was against the orders of the mate; and, secondly, the log-book does not aver that he was absent without leave, but only without leave of the mate, even if the entry of his going against orders is to be taken as asserting that he went without leave. The proofs in such a case should show that the authority over the vessel and the men was, at the time, with the mate; otherwise, a special entry in this form would leave room for an implication that the sailor had leave of absence from some other officer. But, without pressing this criticism upon the terms of the entry, the entry is not in substance of a character to produce a forfeiture of wages. It does not purport to charge the man with absenting himself from the ship without leave, but with disobedience of the orders of the mate in going ashore. The mate may have forbidden his going, though he had previous leave from competent authority. The entry of the 7th of January, for the reasons before given, is not sufficient to subject Harrison to a forfeiture of wages. The mate testifies, that on Wednesday, the 6th of January, at furthest, (and he is not certain but it might have been on Tuesday, the 5th,) the other two libellants offered to unload the cargo, but the master refused to receive them, or to have anything further to do with them. This act of the master, therefore, destroys, as to them, all the efficacy of the entries in the log subsequent to that day.

There is not, then, as against either of the libellants, proof that they were absent from the vessel without leave for forty-eight hours after being logged, even if the entry had been made in the manner required by law, and a forfeiture of wages cannot be enforced against them. As the claimants insist upon the enforcement of the inflexible punishment of a forfeiture of wages for the offence charged upon the crew, it is no more than meet that, in obtaining such penalty, they should, on their part, be held to conform their proof to the strictest letter of the law.

It is unnecessary to consider how far the conduct of the libellants might subject them to punishment, by diminution of wages, for an infraction of the law maritime, because no equitable indemnity is sought by the owners for that cause. The whole defence is, that the libellants were guilty of the desertion which carried with it the penalty inflicted by the statute. It is not claimed in the answer that the libellants have, by disobedience of orders, unwarrantable absence from the ship, or neglect of duty, rendered themselves liable to make good the damages sustained by the claimants, or exposed themselves to such punishment as the court may, in its discretion, under the rules of the maritime law, in respect to acts of malfeasance or nonfeasance on the part of sailors, see fit to impose—such as an adequate mulct or abstraction of wages, because of a breach of contract or an omission to perform the duties enjoined by law. On the contrary, an absolute forfeiture is insisted on, upon the ground that the statutory offence has been committed and that the statutory punishment must follow. I shall accordingly hold, upon this branch of the defence, that the necessary proof, as required by the statute, has not been produced on the part of the claimants, to subject the libellants to a forfeiture of wages. I am the more ready to exact a strict compliance, on the part of the master, with the rule prescribing the manner in which the entry of absence shall be made in order to be evidence of desertion, because it most manifestly appears that the seamen were on inquiry as to their rights, and had not wilfully abandoned the vessel with the design of desertion. They did not intend to leave her, unless they were legally acquitted of their agreement. If this will not entirely exonerate them under the maritime law, it may at least be rightfully regarded, in a court of admiralty, as mitigating the offence, and taking from it the character of wilful desertion. Abb. Shipp. (Ed. 1829) 464, note. They presented themselves every day on board, and evinced no intention to commit a wilful violation of their contract or duties. The officers also seem to have impliedly acquiesced in the propriety of the seamen's proceedings, inasmuch as no steps were taken to enforce their obedience to the service asked of them.

The other branch of the defence is, that no right of action existed at the time this suit was instituted. The period of service contracted for by the articles had not expired by lapse of time. The libellants contend, that the true meaning of the articles is, that the contract continued until the arrival of the vessel at her port of delivery in the United States; that she might make one or more ports before reaching that of her final delivery; but that the whole run must be accomplished within the period of six months. The claimants contend, that the term of service was to last for six months, and did not expire when the vessel reached the United States, or, if it did, that the libellants were bound to discharge the cargo, and could not prosecute for their wages until the expiration of ten days after the safe mooring and unlading of the vessel. The libellants also show a deviation from the voyage mentioned in the articles, to Maracaibo, on the Main, and claim that this absolved them from their agreement, and gave them a right to their discharge and pay on the entrance of the vessel into this port. The view I take of the evidence will render it unnecessary to discuss the meaning of the agreement in the articles, or to consider what effect a deviation like the one here set up might have upon the mariner's contract. Because, as it seems to me, the libellants show that they were discharged from the vessel after her arrival in this port. After such discharge, a mariner's connection with his vessel and his obligation under his contract are terminated, and he may at once recover wages then due. The libellants swear, that as soon as the vessel was made fast, the mate gave them leave to go ashore, making at the same time declarations which might well be taken as a discharge, if the proof of them were clear. This, however, is denied by the mate, and higher credit is to be given to his testimony, in this case, as to his own declarations. Still, the conduct of the master for several succeeding days, in not requiring the men to go to their duty, though they were in the habit of coming on board the vessel every day, might import that he understood they were discharged and meant they should so understand it. There is room for doubt, however, whether the discharge was absolute, and one of which the libellants can avail themselves, previous to the 6th of January, when the captain sent them off, telling them he should have nothing more to do with them. This was but three days before the suit was commenced, and had the point of discharge been made a subject of controversy at the hearing, I should have felt disposed to direct further proofs to be taken upon it. This point may have been fully litigated on showing cause before the magistrate, before issuing process against the vessel, and his decision may have been satisfactory to the parties, especially as it appears by the proofs that the cargo was discharged on the 2d of January, and that on the 12th,

when the mate was examined, the brig was about to proceed to Boston. Although this point is open upon the pleadings, and the claimants are authorized to raise the objection and demand the judgment of the court upon it, yet the court may be satisfied with less evidence than if it had been the leading point in contestation before the magistrate on the summons. or on the hearing here.

When the contract is terminated, the right to wages becomes perfect in the seamen. The contract need not end by the fulfillment of its terms. A discharge of the seamen by the master, or a constructive discharge by breaking up the voyage, will entitle them to demand payment of their wages. Abb. Shipp. (Ed. 1829) 442, note. The proofs satisfy me that the men were allowed to leave the service by the master, and, therefore, the defence that the right of action had not accrued when the suit was brought, cannot be maintained. Accordingly, I decree for wages and costs, with the usual reference to the clerk to ascertain the amount due, and report thereon to the court. Decree accordingly.

NOTE [from original report]. This decree was reversed on appeal by the circuit court, in December, 1830. on two grounds, as it is understood: 1st. That the contract did not terminate with the arrival and discharge of the vessel at her last port of destination, but was for six months certain; 2d. That the statutory penalty of forfeiture applied to an unlawful absence of a seaman from his vessel for forty-eight hours, if proved according to the general rules of evidence.